**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MYRDUS ARCHIE,                         )
                                       )
         Petitioner,             )      2:10-cv-01968-RLH-NJK
                                       )
vs.                                    )      **ORDER**
                                       )
SHERYL FOSTER, *et al.*,               )
                                       )
         Respondents.            )
_____/

     This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner represented by counsel.  Before the Court is respondents' motion to partially dismiss the amended petition.  (ECF No. 37).

**I. Procedural History**

     On September 10, 2003, the State filed an amended complaint in the Las Vegas Township Justice Court, charging petitioner and her co-defendant with Count 1, conspiracy; Count 4, robbery with a deadly weapon; Count 5, murder with a deadly weapon; Count 6, robbery with a deadly weapon; and Count 7, attempted murder with a deadly weapon.  (Exhibit A).[1]  At the conclusion of the preliminary hearing on October 27, 2003, the justice of the peace bound petitioner and her co-defendant over to the district court.  (Exhibit 20B).  On November 6, 2003, the State filed a criminal

_____

    [1]  The exhibits referenced in this order are found in the Court's record at ECF Nos. 34, 35 & 37.

information in the Eighth Judicial District Court for the State of Nevada, charging petitioner with the same crimes as alleged in the amended criminal complaint.  (Exhibit 19).[2]  At her arraignment on November 18, 2004, petitioner entered a plea of not guilty.  (Exhibit B).

On September 8, 2004, petitioner filed a motion to sever.  (Exhibit C).  On November 18, 2003, petitioner filed a second motion to sever her case from that of her co-defendant.  (Exhibit D). The trial court denied the motions to sever in an order filed February 2, 2005.  (Exhibit E).

Petitioner's trial was held January 2, 2007, through January 24, 2007.  (Exhibits 21-23B; Exhibits 25-34).  The jury rendered guilty verdicts against petitioner for conspiracy, two counts of robbery with a deadly weapon, attempted murder with a deadly weapon, and second degree murder with a deadly weapon.  (Exhibit 35).

Petitioner was sentenced on March 13, 2007.  (Exhibit 37).  The trial court found that petitioner was a habitual criminal offender and sentenced her to the following: Count 1, 24-60 months imprisonment; Count 3, life without parole consecutive to Count 1; Count 4, life without parole, concurrent with Count 3; Count 5, life without parole to run consecutive to all other counts; Count 6, life without parole to run consecutive to all other counts.  (Exhibit 44).  The judgment of conviction reflecting petitioner's convictions and sentences was filed on March 27, 2007.  (*Id.*).

Petitioner appealed her convictions and sentences on direct appeal.  (Exhibits 3, 6, 8).  On February 25, 2010, the Nevada Supreme Court entered an order affirming in part, reversing in part, and remanding petitioner's case to the state district court.  (Exhibit 1).  The Nevada Supreme Court reversed petitioner's conviction for attempted murder because the State presented no evidence that petitioner possessed the specific intent to kill.  (Exhibit 1, at pp. 1-3).  The Nevada Supreme Court affirmed all of petitioner's other convictions and remanded the case for entry of an amended judgment of conviction.  (Exhibit 1, at p. 10).  The state district court re-sentenced petitioner and

---

[2]  Petitioner's co-defendant was charged with Count 2 (burglary) and Count 3 (larceny) of the information, but petitioner was not charged with these two counts.

filed an amended judgment of conviction on May 6, 2010, rescinding the sentence for attempted

murder.  (Exhibit 45).

On November 9, 2010, this Court received petitioner's *pro se* federal habeas corpus petition.

(ECF No. 1-2).  Although petitioner does not indicate the date on which she dispatched her federal

petition, she signed the petition on November 4, 2010.  (ECF No. 1-2, at p. 21).  By order filed

January 24, 2011, this Court granted petitioner's motion for counsel.  (ECF No. 8).  After the Federal

Public Defender notified the Court of its inability to represent petitioner, the Court appointed

attorney Beau Sterling to represent petitioner.  (ECF No. 10).  On July 11, 2011, counsel for

petitioner filed a motion for a stay pending disposition of petitioner's state post-conviction habeas

proceedings.  (ECF No. 13).  Respondents filed a response in which they indicated that they took no

position regarding the motion.  (ECF No. 15).  By order filed December 7, 2011, the Court granted

petitioner a stay for the purpose of concluding state court proceedings on the post-conviction habeas

petition.  (ECF No. 16).

On May 6, 2011, through appointed counsel, petitioner filed a post-conviction habeas petition

in the state district court.  (Exhibit 16).  At a hearing on October 9, 2012, the state district court

denied the post-conviction habeas petition.  (Exhibit 38, Minutes of 10/9/2012).  On November 1,

2011, the state district court entered findings of fact, conclusions of law, and order denying the

habeas petition.  (Exhibit 42).  Petitioner did not appeal the state district court's order denying her

habeas petition.

Petitioner, acting *pro se*, filed a motion to withdraw counsel in this Court on October 23,

2012.  (ECF No. 18).  This Court denied the motion without prejudice.  (ECF No. 20).  On May 31,

2013, petitioner filed a second *pro se* motion to withdraw counsel, asking that attorney Beau Sterling

be taken off the case, and requesting substitute counsel.  (ECF No. 27).  On July 29, 2013, this Court

granted petitioner's motion, relieving appointed counsel Beau Sterling, and appointing attorney Todd

M. Leventhal as petitioner's new counsel.  (ECF No. 29).  On August 28, 2013, attorney Leventhal

filed a status report on behalf of petitioner, seeking to reopen this action.  (ECF No. 30).  On November 15, 2013, this Court granted the request to reopen the case and set a deadline for the filing of an amended petition.  (ECF No. 32).  Petitioner filed an amended petition on January 15, 2014, along with exhibits.  (ECF Nos. 34 & 35).  The amended petition raises nine grounds for relief.  (ECF No. 34).  Respondents have filed the instant motion to partially dismiss the amended petition.  (ECF No. 37).  Through counsel, petitioner has filed an opposition to the motion to dismiss.  (ECF No. 38).  Respondents have filed a reply.  (ECF No. 41)

**II.  Discussion**

Respondents argue that portions of the amended petition are unexhausted, that some claims are untimely, and some claims fail to state a claim for federal habeas corpus relief.  (ECF No. 37).

**A.  Timeliness and Relation-Back**

Respondents argue that parts of Grounds 1, 2, 3, and 7 of the amended petition are untimely because the claims do not relate back to petitioner's original federal petition pursuant to *Mayle v. Felix*, 545 U.S. 644, 657 (2005).  The Antiterrorism and Effective Death Penalty Act (AEDPA) amended the statutes controlling federal habeas corpus practice to include a one-year statute of limitations on the filing of federal habeas corpus petitions.  With respect to the statute of limitations, the habeas corpus statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has

1   been newly recognized by the Supreme Court and made
    retroactively applicable to cases on collateral review; or

2

3   (D) the date on which the factual predicate of the claim or
    claims presented could have been discovered through the
    exercise of due diligence.

4

5   (2) The time during which a properly filed application for State
    post-conviction or other collateral review with respect to the
    pertinent judgment or claim is pending shall not be counted

6   toward any period of limitations under this subsection.

7   28 U.S.C. § 2244(d).

8        For purposes of the AEDPA limitations period, "a judgment becomes 'final' in one of two

9   ways – either by the conclusion of direct review by the highest court, including the United States

10  Supreme Court, to review the judgment, or by the expiration of the time to seek such review, again

11  from the highest court from which such direct review could be sought." *Wixom v. Washington*, 264

12  F.3d 894, 897 (9th Cir. 2001).  Once the judgment of conviction becomes final, the petitioner has 365

13  days to file a petition for relief under 28 U.S.C. § 2254, with tolling of the time for filing during the

14  pendency of a properly filed application for state post-conviction or other collateral review with

15  respect to the pertinent judgment or claim . . . ."  28 U.S.C. § 2254(d).

16       In the instant case, the amended judgment of conviction was filed on May 6, 2010.  (Exhibit

17  45).  Petitioner had thirty days after May 6, 2010, within which to file a direct appeal.  Nevada Rules

18  of Appellate Procedure, Rule 4.  Petitioner did not pursue a direct appeal from the amended

19  judgment of conviction.  Where a petitioner does not appeal from his judgment of conviction, the

20  one-year AEDPA limitations period begins to run on the date on which the time to seek appeal

21  expires.  28 U.S.C. § 2244(d)(1)(a); NRAP 4.  Thus, petitioner's conviction became final on June 5,

22  2010, the deadline for filing a direct appeal.  Pursuant to the AEDPA, petitioner then had one year

23  within which to file the federal habeas petition, unless the time was otherwise tolled.  The AEDPA

24  statute of limitations expired on June 5, 2011.  The original petition, filed November 4, 2010, was

25  timely filed.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (pursuant to the "mailbox rule," federal

26

courts deem the filing date of a document as the date that it was given to prison officials for mailing).
The amended petition, filed March 12, 2014, was filed well after the expiration of the AEDPA statute of limitations. Therefore, the Court must determine if the claims raised in the amended petition relate back to the original petition, pursuant to *Mayle v. Felix*, 545 U.S. 644, 664 (2005).

Under Federal Rule of Civil Procedure 15, an amended pleading "relates back" to the original pleading only if the acts described in the amended pleading are set forth in the original pleading. Fed. R. Civ. P. 15(c)(2). An amended habeas petition only relates back if the amended claims are tied to the "same core of operative facts" as alleged in the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). In *Mayle*, the petitioner originally raised only a Confrontation Clause claim in his habeas petition, based on the admission of video-taped prosecution witness testimony. 545 U.S. at 648-49. After the one-year AEDPA statute of limitations had passed, petitioner then sought to amend his habeas petition to allege a Fifth Amendment claim based on coercive police tactics used to obtain damaging statements from him. *Id.* The factual basis for each claim was distinct. Petitioner then argued that his amended claim related back to the date of his original habeas petition because the claim arose out of the same trial, conviction or sentence. *Id.* at 659-661. In rejecting petitioner's argument the Supreme Court held that if "claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." *Id.* at 662.

### 1. Ground 1

In Ground 1 of the of the amended petition, petitioner alleges that her rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were violated. Specifically, her right to effective assistance of counsel, right to confront witnesses, and due process rights were violated because the trial court allowed jurors to pose written questions to the witnesses without consultation with counsel and otherwise failed to comply with procedures for questions from jurors, as set forth in *Flores v. State*, 965 P.2d 901 (Nev. 1998). (ECF No. 34, at pp. 13-18). In her original

petition, petitioner alleges her due process rights, and her rights under the Fifth, Sixth, and Fourteenth Amendments were violated because of the improper use of questions from jurors that failed to comply with *Flores v. State*, 965 P.2d 901 (Nev. 1998).  (ECF No. 5, at p. 3).  The factual predicate underlying the claims in the original petition and the amended petition is the same – a challenge to the trial court having allowed jurors to pose written questions to the witnesses without consultation with counsel and without complying with procedures set forth in *Flores v. State*, 965 P.2d 901 (Nev. 1998).  As such, Ground 1 of the amended petition relates back to the original petition, and is therefore deemed timely.

### 2. Ground 2

In Ground 2 of the amended petition, petitioner alleges that her rights to a fair trial and due process were violated due to the failure of the trial court to sever her capitally charged co-defendant who had additional charges not involving petitioner tried in the case.  Petitioner alleges that this forced her to be tried by a jury that was qualified to render a death sentence.  (ECF No. 34, at pp. 19-25).  In the original petition, petitioner alleges that her rights to a fair trial and due process were violated based on the trial court's failure to sever the case from her co-defendant.  (ECF No. 5, at p. 5).  Respondents argue that the amended petition contains a new claim, that "the trial court also persuaded [petitioner's] counsel to relinquish the right to a limiting instruction relative to the theft of the purse from an occupied vehicle (larceny from a person) with which Ms. Archie was not charged." (ECF No. 34, at p. 20).  Although this particular fact was not alleged in the original petition, the allegation is tied to the same core of operative facts as alleged in the original petition.  As such, Ground 2 of the amended petition relates back to the original petition, and is therefore timely.

### 3. Ground 3

Petitioner alleges that she was "convicted and sentenced in violation of her Sixth, Eighth, and Fourteenth Amendment rights to a jury of her peers, a fair and unbiased jury, effective assistance of counsel, equal protection, and right to due process because the State and the trial court peremptorily

challenged only the African-American to sit in the jury venire, who would have been juror number 12, but for the State's challenge." (ECF No. 34, at p. 26). Petitioner further claims that "the trial court failed to record the *Batson* challenges of the three defense counsel thus removing Ms. Archie's only proof of the insufficiency of the State's race-neutral reason for the challenge, if any were given." (*Id.*). Respondents argue that Ground 3 of the amended petition raises new claims of ineffective assistance of counsel and a new substantive claim regarding the trial court's failure to record bench conferences, which were not alleged in the original petition. These claims do not relate back to the original petition and are therefore untimely.

### 4. Ground 7

In Ground 7 of the amended petition, petitioner alleges that she was "convicted and sentenced in violation of her rights under the Fifth and Fourteenth Amendments to the United States Constitution to equal protection of the law and due process because the trial court erred in giving jury instructions on express and implied malice and the instruction relative to the State's burden of proof." (ECF No. 34, at p. 50). The corresponding claim in the original petition is Ground 8, in which petitioner alleges that her due process rights were violated by jury instructions 17 and 18, the instructions defining express and implied malice and malice aforethought. (ECF No. 5, at p. 17). Respondents contend that two claims raised in Ground 5 of the amended petition were raised for the first time: the substantive challenge to the instructions concerning the burden of proof and the ineffective assistance of counsel claim. Indeed, the amended petition alleges ineffective assistance of trial and appellate counsel for failing to object to the language of the malice instructions. (ECF No. 34, at p. 50). The amended petition further alleges that the instruction on the State's burden of proof allowed the jury to convict her of murder based on a lesser standard of proof than beyond a reasonable doubt. (ECF No. 34, at p. 51). The amended petition challenges the general intent instruction (Instruction No. 36) and alleges that trial and appellate counsel were ineffective for failing to raise appropriate objections to the instruction. (ECF No. 34, at p. 51-52). These

1   allegations, raised for the first time in the amended petition, are not based on the same core of

2   operative facts as alleged in the original petition.  (*Compare* ECF No. 34, at pp. 50-52 *with* ECF No.

3   5, at p. 17).  Thus, the challenge to the instructions concerning the burden of proof and the

4   ineffective assistance of counsel claims in Ground 7 of the amended petition do not relate back to the

5   original petition.  Therefore, these claims are dismissed as untimely.  However, the amended

6   petition's challenge to the jury instructions on express and implied malice do relate back to the

7   original petition and are deemed timely.

8         **B. Exhaustion**

9         Respondents argue that each ground of the amended petition is unexhausted in whole or in

10  part.  A federal court will not grant a state prisoner's petition for habeas relief until the prisoner has

11  exhausted his available state remedies for all claims raised.  *Rose v. Lundy*, 455 U.S. 509 (1982); 28

12  U.S.C. § 2254(b).  A petitioner must give the state courts a fair opportunity to act on each of his

13  claims before he presents those claims in a federal habeas petition.  *O'Sullivan v. Boerckel,* 526 U.S.

14  838, 844 (1999); *see also Duncan v. Henry,* 513 U.S. 364, 365 (1995).  A claim remains

15  unexhausted until the petitioner has given the highest available state court the opportunity to

16  consider the claim through direct appeal or state collateral review proceedings.  *See Casey v. Moore,*

17  386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey,* 653 F.2d 374, 376 (9th Cir. 1981).

18        A habeas petitioner must "present the state courts with the same claim he urges upon the

19  federal court."  *Picard v. Connor*, 404 U.S. 270, 276 (1971).  To satisfy exhaustion, each of

20  petitioner's claims must have been previously presented to the Nevada Supreme Court, with

21  references to a specific constitutional guarantee, as well as a statement of facts that entitle petitioner

22  to relief.  *Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2002).  The federal constitutional

23  implications of a claim, not just issues of state law, must have been raised in the state court to

24  achieve exhaustion.  *Ybarra v. Sumner*, 678 F. Supp. 1480, 1481 (D. Nev. 1988) (citing *Picard*, 404

25  U.S. at 276)).  To achieve exhaustion, the state court must be "alerted to the fact that the prisoner [is]

26

asserting claims under the United States Constitution" and given the opportunity to correct alleged violations of the prisoner's federal rights. *Duncan*, 513 U.S. at 365 (1995); s*ee Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir. 1999). It is well settled that 28 U.S.C. § 2254(b) "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Jiminez v. Rice,* 276 F.3d 478, 481 (9th Cir. 2001) (quoting *Rose v. Lundy,* 455 U.S. 509, 520 (1982)).

A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based. *Bland v. California Dept. Of Corrections,* 20 F.3d 1469, 1473 (9th Cir. 1994); *see Duncan*, 513 U.S. at 365-66; *see also Castillo v. McFaddin*, 399 F.3d 993, 999 (9th Cir. 2005). The exhaustion requirement is not met when the petitioner presents to the federal court facts or evidence which place the claim in a significantly different posture than it was in the state courts, or where different facts are presented at the federal level to support the same theory. *See Nevius v. Sumner,* 852 F.2d 463, 470 (9th Cir. 1988); *Pappageorge v. Sumner,* 688 F.2d 1294, 1295 (9th Cir. 1982)**.** A federal habeas petition may, however, present new, additional, or supplemental facts that were not considered in the state court, so long as the evidence does not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *see also Lopez v. Schiro*, 491 F.3d 1029, 1040 (9th Cir. 2007); *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999).

### 1. Ground 1

In Ground 1 of the of the amended petition, petitioner alleges that her rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were violated. Specifically, petitioner alleges that her rights to effective assistance of counsel, to confront witnesses, and to due process were violated because the trial court allowed jurors to pose written questions to the witnesses without consultation with counsel and otherwise failed to comply with procedures for questions from jurors, as set forth in *Flores v. State*, 965 P.2d 901 (Nev. 1998). (ECF No. 34, at pp. 13-18).

Respondents argue that the allegations of ineffective assistance of counsel and violation of the right to confront witnesses are unexhausted. On direct appeal, in the supplemental opening brief, petitioner alleged that her rights to "due process, equal protection, a fair trial, and right to counsel" were violated because the trial court allowed jurors to ask questions of the witnesses without consulting counsel and without following the safeguards established in *Flores v. State*. Petitioner cited to the United States Constitution, at Amendments V, VI, VII, and XIV. (Exhibit 6, at p. 4). In the supplemental opening brief filed at the Nevada Supreme Court, petitioner did allege that his right to counsel was violated, therefore this Court finds the claim to be exhausted. (Exhibit 6, at p. 4). However, petitioner's citation to the United States Constitution's Sixth Amendment does not satisfy the exhaustion requirement regarding the alleged violation of the Confrontation Clause. Nowhere in the opening brief or the supplemental opening brief did petitioner allege a violation of her right to confront witnesses. (Exhibits 3 & 6). A petitioner does not exhaust state remedies by generally appealing to a broad constitutional provision alone. *See Gray v. Netherland*, 518 U.S. 152, 163 (9th Cir. 1996). In order to present the substance of a claim to a state court, the petitioner must reference a specific federal constitutional provision as well as a statement of facts that entitle the petitioner to relief. *Id.* at 162-63. This Court finds that petitioner's allegation of a violation of the right to confront witnesses was not raised on direct appeal, or otherwise, to the Nevada Supreme Court. As such, the Confrontation Clause claim within Ground 1 is unexhausted. The remainder of Ground 1 is exhausted.

### 2. Ground 2

In Ground 2 of the amended petition, petitioner alleges that her rights to a fair trial and due process were violated because the trial court failed to sever her capitally charged co-defendant, who had additional charges not involving petitioner tried in the case. (ECF No. 34, at pp. 19-25). Petitioner alleges the trial court's refusal to sever the case forced her to be tried by a jury that was qualified to render a death sentence. (*Id.*).

1      Respondents contend that, in Ground 2 of the amended federal petition, petitioner places the

2   claim in a significantly different posture by arguing facts not presented to the Nevada Supreme

3   Court.  Specifically, the amended federal petition alleges that the prejudice resulting from the failure

4   to sever "was magnified by the bloody horrific photographs of Christine Anziano and Kirk Cole."

5   (ECF No. 34, at p. 20).  The amended petition continues: "Anyone seeing this evidence would have

6   been shocked and revulsed and likely to seek 'justice' from anyone associated with these crimes."

7   (*Id.*).  Nowhere, in the state appellate briefs on direct appeal, did petitioner rely on photographs of

8   Anziano and Cole as an alleged error based on the failure to sever because her co-defendant faced

9   additional charges.  As such, the allegations concerning the gruesome photographs of Christine

10  Anziano and Kirck Cole are unexhausted.

11      Respondents next argue that petitioner added facts to the amended federal petition, arguing

12  the alleged reliance of the jury on witnesses testimony, specifically, the color of the motor vehicle in

13  Las Vegas, including unsupported claims that foreign cars from the 1980's and 1990's "still littered

14  the road" in Las Vegas at the time of the incident as well as claims from surveys released after

15  petitioner's trial discussing the color of vehicles and questions regarding the ownership of purses

16  found in petitioner's residence.  (ECF No. 34, at pp. 20-25).  In the briefing to the Nevada Supreme

17  Court, petitioner did not argue any significance based on the type and color of her vehicle, or the

18  ownership of purses in petitioner's residence, as this may relate to the alleged failure to sever

19  because her co-defendant faced additional charges.  These additional allegations are therefore

20  unexhausted.

21      Respondents next argue that the amended petition includes a fact never raised to the Nevada

22  Supreme Court – that "the trial court also persuaded [petitioner's] counsel to relinquish the right to a

23  limiting instruction relative to the theft of a purse from an occupied vehicle."  (ECF No. 34, at p. 20).

24  On direct appeal, petitioner never raised the claim that the trial court persuaded trial counsel to

25  reconsider the request for a limiting instruction.  As such, the claim that "the trial court also

26

persuaded [petitioner's] counsel to relinquish the right to a limiting instruction relative to the theft of a purse from an occupied vehicle" within Ground 2 is unexhausted.  The remainder of Ground 2, alleging that petitioner was denied due process and a fair trial because the trial court refused to grant a severance of the joint trial between petitioner and her co-defendant, forcing petitioner to be tried by a jury that was qualified to render a death sentence, is exhausted.

### 3.  Ground 3

In Ground 3 of the amended petition, petitioner alleges that she was "convicted and sentenced in violation of her Sixth, Eighth, and Fourteenth Amendment rights to a jury of her peers, a fair and unbiased jury, effective assistance of counsel, equal protection, and right to due process because the State and the trial court peremptorily challenged only the African-American to sit in the jury venire, who would have been juror number 12, but for the State's challenge."  (ECF No. 34, at p. 26). Petitioner further claims that "the trial court failed to record the *Batson*[3] challenges of the three defense counsel thus removing Ms. Archie's only proof of the insufficiency of the State's race-neutral reason for the challenge, if any were given."  (*Id.*).  Respondents assert that petitioner then "goes on for over four pages challenging that the bench conferences were not recorded; the fact that the jury did not compose a fair cross-section of the community; effectiveness of trial and appellate counsel; requesting discovery of records not presented to the state courts and arguing evidence purported demographic studies conducted years after Archie's trial."  (ECF No. 37, referencing amended petition at ECF No. 34, pp. 26-30).  Respondents argue that on direct appeal, petitioner raised the more discreet claim of a stand-alone *Batson* challenge.  (*See* Exhibit 3, at pp. 22-24).

In the opening brief on direct appeal, petitioner argued that she received an unfair trial when the trial court refused to grant the defense's *Batson* challenge regarding the exclusion of prospective juror Henderson, an African-American juror.  (Exhibit 3, at pp. 22-24).  Petitioner argued that the

---

[3] *Batson v. Kentucky*, 476 U.S. 79 (1986).

13

1   prosecution did not establish a race-neutral reason for exercising its peremptory strike against

2   prospective juror Henderson.  (*Id.*).

3          Respondents are correct that petitioner failed to argue on her state appeal a specific claim that

4   the trial court failed to record bench conferences concerning the *Batson* challenges.  (Exhibit 3).  As

5   such, this portion of Ground 3 was not properly presented to the Nevada Supreme Court and is

6   therefore unexhausted.

7          Petitioner also did not present to the state courts her claim that her rights to the effective

8   assistance of counsel or equal protection were violated as a result of the makeup of the jury in her

9   case.  (Exhibit 3).  As such, these claims are unexhausted.

10          Regarding petitioner's claim that the jury did not compose a fair cross-section of the

11   community, petitioner argued in the opening brief on direct appeal that "he [Henderson] had been the

12   only black male on the first voir dire panel."  (*Id.*, at p. 24).  Petitioner also argues in the opening

13   brief that she was tried by a "jury that was not a cross-section of the community."  (*Id.*).  Thus, this

14   Court deems exhausted the claim within Ground 3 that the jury was not a fair cross-section of the

15   community.  However, petitioner did not present the Nevada Supreme Court with evidence such as

16   population records or studies during the relevant time period to support the claim that the jury did

17   not compose a fair cross-section of the community.  In the federal amended petition, in support of the

18   argument that the jury was not a cross-section of the community, petitioner discusses a population

19   demographic study that was conducted for the years 2007-2012.  (ECF No. 34, at p. 28).  The

20   petition also includes a preliminary discovery request to obtain information from the Clark County

21   Jury Commissioner relative to the argument that the jury did not compose a fair cross-section of the

22   community.  If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner

23   must overcome the burden set in § 2254(d) and (e) on the record that was before the state court.

24   *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011).  As petitioner recognizes in the opposition, the

25   Nevada Supreme Court considered the "makeup of the venire" in its order of February 25, 2010.

26

1   (Exhibit 1, at p. 7).  But such discussion was not based on population demographic studies such as

2   the one discussed in the federal petition.  As such, petitioner's reference to and use of studies,

3   reports, or other information that was not in the state court record, and specifically, was not

4   presented to the Nevada Supreme Court, may not be used in this federal habeas corpus action to

5   support petitioner's claims.  *Pinholster*, 131 S.Ct. at 1400.  Petitioner's claim that she was deprived

6   of due process when the trial court refused to grant the defense's *Batson* challenge regarding the

7   exclusion of prospective juror Henderson, an African-American juror, is exhausted.

8                    **4.  Ground 4**

9           Petitioner alleges that her conviction and sentence violated her constitutional rights,

10  specifically: (1) violated her right to a fair trial because of the joinder of counts charged against her

11  co-defendant but not against petitioner; (2) violated her right to a trial by an unbiased jury; and (3)

12  violated her right to have the charges against her proved beyond a reasonable doubt, due to the

13  spillover effect of her co-defendant's crimes when she was tried in the same trial as the co-defendant.

14  (ECF No. 34, at p. 31).  The Court agrees with respondents that Ground 4 is duplicative of Ground 8,

15  in which petitioner challenges the fact that the jury in petitioner's criminal trial was "death

16  qualified."  (ECF No. 34, at pp. 54-64).  Also, to the extent that Ground 4 alleges a claim that the

17  failure to sever exposed petitioner to claims with which she was not charged, those arguments are

18  duplicative of Ground 2.  (ECF No. 34, at pp. 19-25).

19          Moreover, several facts alleged in Ground 4 of the federal amended petition were not

20  presented to the Nevada Supreme Court, and are therefore unexhausted.  A claim is not exhausted

21  unless the petitioner has presented to the state court the same operative facts and legal theory upon

22  which his federal habeas claim is based.  *Bland v. California Dept. Of Corrections,* 20 F.3d 1469,

23  1473 (9th Cir. 1994).  The exhaustion requirement is not met when the petitioner presents to the

24  federal court facts or evidence which place the claim in a significantly different posture than it was in

25  the state courts, or where different facts are presented at the federal level to support the same theory.

26

*See Nevius v. Sumner,* 852 F.2d 463, 470 (9th Cir. 1988); *Pappageorge v. Sumner,* 688 F.2d 1294, 1295 (9th Cir. 1982).

In petitioner's opening brief on direct appeal, petitioner argued the spillover claim as follows:

> In the instant case, the evidence against Mr. Walker was overwhelming.  Again, as mentioned above, if the State intended to try Mr. Walker with the Susan Simon counts then Ms. Archie should have been granted a separate trial.  Ms. Archie was severely prejudiced by the introduction of the Susan Simon counts against Mr. Walker.  Ms. Archie suffered unfair prejudice.
>
> * * *
>
> In the instant case Ms. Archie should have been permitted a separate trial.  The improper spillover effect to Ms. Archie was substantial. They jury was able to hear about Mr. Walker's crime against Susan Simon.  Ms. Archie was not charged and the jury should not been able to consider it against her.

(Exhibit 3, at pp. 18-19).  In the opening brief on direct appeal, petitioner specifically alleged the spillover evidence consisted of the "Susan Simon counts."  (Exhibit 3, at pp. 18-20).  In the federal amended petition, petitioner now argues that the spillover evidence includes: the use of crime scene photographs from a crime with which petitioner was charged; the fact that the Nevada Supreme Court reversed the jury verdict against petitioner for the attempted murder of Cole, and the testimony of witnesses pertaining to acts with which petitioner was charged.  (ECF No. 34, at pp. 31-37). These additional facts concerning spillover evidence were not presented to the Nevada Supreme Court and are therefore unexhausted.  Petitioner's claim that the failure to sever petitioner's case from her co-defendant subjected her to spillover evidence regarding the "Susan Simon counts," (burglary and larceny) as pled in the fourth claim of petitioner's opening brief on direct appeal submitted to the Nevada Supreme Court, is exhausted.

### 5. Ground 5

Petitioner alleges that she was convicted and sentenced in violation of her equal protection and due process rights "when the State introduced inadmissible, prejudicial evidence without prior notice to the trial court or the defense."  (ECF No. 34, at p. 38).  Petitioner argues that evidence of 17

purses found in her apartment and evidence of her alias, Mary Smith, should not have been admitted into evidence during trial. (*Id.*). Petitioner alleges that the defense was not afforded a hearing pursuant to *Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503 (1985), regarding the admissibility of uncharged bad acts and that evidence was introduced at trial in violation of NRS 48.045(2). (*Id.*). Respondents argue that Ground 5 is unexhausted, or in the alternative, raises no federal claims.

### a. Cognizability

A petitioner in a federal habeas action is only entitled to relief "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Unless an issue of federal constitutional or statutory law is implicated by the facts presented, the claim is not cognizable under federal habeas corpus. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Federal habeas relief is generally not available to review questions about the admissibility of evidence. *Estelle*, 502 U.S. at 67. Allegations that a state court failed to properly apply state law are not cognizable in a federal habeas action. *See Swarthout v. Cooke*, 131 S.Ct. 859, 862-63 (2011); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Missouri v. Hunter*, 459 U.S. 359, 368 (1983) (recognizing that federal courts on habeas review are bound by a state's interpretation of that state's statutory provisions); *Murdoch v. Castro*, 365 F.3d 699, 703 n.1 (9th Cir. 2004) ("We are not a State Supreme Court of errors; we do not review questions of state law. On federal habeas we may only consider whether the petitioner's conviction violated constitutional norms. *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991)."). To the extent that petitioner asserts a violation of NRS 48.045(2) and that the trial court failed to conduct a *Petrocelli* hearing, those claims are questions of state law and are not cognizable in federal habeas corpus law.

However, in Ground 5 petitioner has also alleged that the introduction of prejudicial evidence was a violation of due process under the United States Constitution. The Ninth Circuit has held that, on habeas review, federal courts may not interfere with a state evidentiary ruling, but may only consider whether the evidence was so prejudicial that its admission violated fundamental due process

and the right to a fair trial.  *Fuller v. Roe*, 182 F.3d 699, 703 (9th Cir. 1999); *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998); *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (1993).  Federal courts "are not a state supreme court of errors; [they] do not review questions of state evidence law.  On federal habeas [the courts] may only consider whether the petitioner's conviction violated constitutional norms."  *Jammal v. Van De Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) (citing *Engle v. Issac*, 456 U.S. 107, 119 (1982)).  Petitioner's due process challenge to the introduction of prejudicial evidence states a cognizable claim for federal habeas corpus relief.  As the jurisprudence indicates, to obtain relief, petitioner ultimately must demonstrate that the admission of the evidence was so prejudicial that its admission violated fundamental due process.

### b. Exhaustion

Respondents argue that petitioner failed to properly federalize this claim when presenting it to the Nevada Supreme Court.  Regarding petitioner's challenge to the introduction of evidence regarding the 17 purses found in her apartment, respondents argue that in direct appeal proceedings, petitioner argued a violation of NRS 48.045(2) and cited two Nevada cases, including *Petrocelli v. State*.  Respondents contend that neither of the state cases cited federal law.  Regarding petitioner's challenge to the introduction of evidence of her alias, Mary Smith, respondents argue that in direct appeal proceedings, petitioner argued a violation of NRS 48.045(2) and Nevada state law case *Tavares v. State*, 117 Nev. 725, 30 P.3d 1128 (2001).

In the opening brief on appeal to the Nevada Supreme Court, petitioner cited to the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, arguing that the evidence of 17 purses in her home and use of her alias was "highly prejudicial and substantially outweighed the probative value."  (Exhibit 3, at p. 21).  A petitioner does not exhaust state remedies by generally appealing to a broad constitutional provision alone.  *See Gray v. Netherland*, 518 U.S. 152, 163 (9th Cir. 1996).  In order to present the substance of a claim to a state court, the petitioner must reference a specific federal constitutional provision as well as a statement of facts that entitle the petitioner to

18

1    relief. *Id.* at 162-63.  This Court finds that petitioner's allegation of a violation of the equal

2    protection resulting from the admission of prejudicial evidence was not presented to the Nevada

3    Supreme Court.  As such, the equal protection claim within Ground 5 of the amended petition is

4    unexhausted.  However, the Court finds that petitioner did in fact exhaust the claim alleging a denial

5    of due process and a fair trial based on the admission of alleged prejudicial evidence (the 17 purses

6    and alias).  (Exhibit 3, at pp. 20-22).  Accordingly, petitioner's due process regarding the admission

7    of prejudicial evidence is exhausted.

8                    **6.  Ground 6**

9           Petitioner alleges double jeopardy, cruel and unusual punishment, equal protection, and due

10   process violations because she was sentenced as a habitual offender.  (ECF No. 34, at p. 43).  First,

11   petitioner asserts that she was sentenced under the "Large Habitual Offender Statute," which she

12   claims does not exist, rendering the sentence vague.  Second, petitioner asserts that the sentences

13   imposed violated the double jeopardy clause because she had been previously sentenced under the

14   habitual offender statute.  Third, petitioner argues that her prior felony convictions were not violent.

15   Fourth, petitioner challenges the trial court's findings at sentencing.  Fifth, petitioner claims that the

16   sentence is overly punitive as a sentence for a first violent felony conviction.  Sixth, petitioner asserts

17   "an evolving state of the habitual criminal offender statute," noting the minutes of a 2010 Nevada

18   legislative committee on criminal law, which posited that offenders with non-violent convictions be

19   treated differently from more violent offenders.  (ECF No. 34, at pp. 43-48).

20                    **a.  Exhaustion**

21          Respondents argue that Ground 6 is unexhausted.  In the opening brief on direct appeal,

22   petitioner presented the double jeopardy claim that her prior convictions had already been previously

23   used to sentence her as a habitual offender; petitioner also presented a claim that her life without

24   parole sentence was cruel and unusual punishment.  (Exhibit 3, at pp. 24-25).  The remaining claims

25   made in Ground 6 of the amended federal petition were not presented to the Nevada Supreme Court.

26

As such, the Court will allow petitioner's claims of double jeopardy and cruel and unusual punishment to proceed as exhausted claims.  All other sub-claims within Ground 6 are unexhausted.

### b. Cognizability

Unless an issue of federal constitutional or statutory law is implicated by the facts presented, the claim is not cognizable under federal habeas corpus.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  Federal habeas relief is generally not available to review questions about the admissibility of evidence.  *Estelle*, 502 U.S. at 67.  Allegations that a state court failed to properly apply state law are not cognizable in a federal habeas action.  *See Swarthout v. Cooke*, 131 S.Ct. 859, 862-63 (2011); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Missouri v. Hunter*, 459 U.S. 359, 368 (1983) (recognizing that federal courts on habeas review are bound by a state's interpretation of that state's statutory provisions); *Murdoch v. Castro*, 365 F.3d 699, 703 n.1 (9th Cir. 2004) ("We are not a State Supreme Court of errors; we do not review questions of state law.  On federal habeas we may only consider whether the petitioner's conviction violated constitutional norms.  *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).").  To the extent that petitioner's claims in Ground 6 contest the Nevada Supreme Court's application of purely state law, those claims are questions of state law and are not cognizable in federal habeas corpus law.

### 7. Ground 7

Petitioner alleges that her rights to equal protection and due process were violated because the trial court erred in giving jury instructions on express and implied malice and an instruction on general intent relative to the State's burden of proof.  (ECF No. 34, at p. 50).  Ground 7 also contains a claim of ineffective assistance of trial and appellate counsel for failing to object to or raise error regarding the jury instructions.  (*Id.*, at pp. 50-52).  Respondents argue that Ground 7 is partially unexhausted.

In the opening brief on direct appeal, petitioner alleged that the malice instructions were impermissibly vague.  (Exhibit 3, at pp. 25-27).  Jury Instruction #17 defined "malice aforethought."

1    Jury Instruction #18 was the instruction on express and implied malice.  The alleged offending

2    language was the reference to the phrase "heart fatally bent on mischief" in Jury Instruction #17 and

3    the phrase "abandoned or malignant heart" in Jury Instruction #18.  (*Id.*).

4       In the amended federal petition, petitioner challenges the jury instructions on express and

5    implied malice in Jury Instruction #18.  Petitioner reiterates her objection to the phrase "heart fatally

6    bent on mischief" in Jury Instruction #17, and adds a new objection to the phrase "reckless disregard

7    for the consequences of social duty," also from Jury Instruction #17.  (ECF No. 34, at p. 50).  The

8    portion of this claim challenging the phrase "heart fatally bent on mischief" in Instruction #17 is

9    exhausted, as petitioner presented the claim to the Nevada Supreme Court in her opening brief on

10   direct appeal.  (Exhibit 3, at pp. 25-27).  However, the claim challenging the phrase "reckless

11   disregard for the consequences of social duty" in Instruction #17 is unexhausted, as it was not

12   presented to the Nevada Supreme Court.

13      Also in Ground 7 of the amended petition, petitioner presents a new claim that counsel was

14   ineffective for failing to object to the implied malice instruction.  (ECF No. 34, at p. 50).  Petitioner

15   further alleges that Jury Instruction #36, regarding general intent, "contained an improper mandatory

16   presumption that petitioner's intent was conclusively proven by the acts constituting the offense,"

17   and that this instruction impermissibly reversed the burden of proof.  (*Id.*, at pp. 51-52).  Petitioner

18   contends that counsel was ineffective for failing to raise appropriate objections to the general intent

19   instruction.  (*Id.*).  Petitioner's claim of ineffective assistance of counsel was never presented to the

20   Nevada Supreme Court and is therefore unexhausted.  Petitioner's claim regarding the general intent

21   instruction relating to the burden of proof also was never presented to the Nevada Supreme Court

22   and is unexhausted.  Petitioner's claim to the phrase "heart fatally bent on mischief" in Jury

23   Instruction #17 is exhausted.

24   / / / / / / / / / /

25   / / / / / / / / / /

26

21

**8. Ground 8**

Petitioner alleges that she "was convicted and sentenced in violation of her rights under the Fifth and Fourteenth Amendments to the United States constitution to equal protection of the law and due process when the jury which convicted her was death-qualified and the trial court denied severance." (ECF No. 34, at p. 54). Petitioner contends that because the trial court refused to sever her case from her co-defendant's, she was subjected to being tried by a jury that was "death-qualified," since her co-defendant was facing the death penalty. (*Id.*)

Respondents argue that Ground 8 is partially unexhausted. In the opening brief on direct appeal to the Nevada Supreme Court, petitioner presented the facts supporting her claims of a denial of a fair trial and due process. (Exhibit 3, at pp. 10-12). In the opposition to the motion to dismiss, petitioner argues that the equal protection claim was presented to the Nevada Supreme Court because she cited the Fourteenth Amendment in the opening brief on appeal. (ECF No. 38, at p. 16). Petitioner's citation to the United States Constitution's Fourteenth Amendment does not satisfy the exhaustion requirement regarding the alleged equal protection violation. A petitioner does not exhaust state remedies by generally appealing to a broad constitutional provision alone. *See Gray v. Netherland*, 518 U.S. 152, 163 (9th Cir. 1996). In order to present the substance of a claim to a state court, the petitioner must reference a specific federal constitutional provision as well as a statement of facts that entitle the petitioner to relief. *Id.* at 162-63. Petitioner did not present an equal protection claim regarding these facts to the Nevada Supreme Court. (*Id.*). As such, the equal protection claim in Ground 8 is unexhausted.

Additionally, Grounds 8 is partially unexhausted because the amended petition includes new factual allegations and arguments that were not presented to the Nevada Supreme Court. The first few pages of Ground 8 closely track the allegations and arguments made in petitioner's opening brief to the Nevada Supreme Court, (*compare* ECF No. 34, at pp. 54-56 *with* Exhibit 3, at pp. 10-12). Petitioner then includes several pages alleging details of several potential jurors' statements during

1   the *voire dire* process.  (ECF No. 34, at pp. 56-59).  The exhaustion requirement is not met when the

2   petitioner presents to the federal court facts or evidence which place the claim in a significantly

3   different posture than it was in the state courts, or where different facts are presented at the federal

4   level to support the same theory.  *See Nevius v. Sumner,* 852 F.2d 463, 470 (9th Cir. 1988);

5   *Pappageorge v. Sumner,* 688 F.2d 1294, 1295 (9th Cir. 1982).  The additional facts concerning the

6   potential jurors' statements place the claim in a significantly different posture than was presented to

7   the Nevada Supreme Court.  Therefore, this portion of Ground 8 is unexhausted.

8         In Ground 8 of the federal amended petition, petitioner argues that because the death-

9   qualified jury convicted her of attempted murder, which was later reversed by the Nevada Supreme

10  Court, this lends more credence to her argument that her trial should have been severed from her co-

11  defendant's trial.  (*See* ECF No. 34, at p. 59, lines 12-16; p. 60, at lines 11-15; p. 63, at lines 4-8).

12  This argument, which arose after the reversal of petitioner's conviction for attempted murder, was

13  never brought before the Nevada Supreme Court.  As such, the claim that the Nevada Supreme

14  Court's reversal of her attempted murder conviction lends more credence to the argument that her

15  trial should have been severed from her co-defendant, is unexhausted.  However, petitioner's claim

16  that her right to due process was violated because the trial court refused to sever her case from her

17  co-defendant's case, allowing a death-qualified jury to convict her, is exhausted.

18        **9.  Ground 9**

19        In Ground 9, petitioner presents a claim of cumulative error.  (ECF No. 34, at pp. 65-67).

20  The cumulative error claim is exhausted to the extent it alleges claims that were fairly presented to

21  the Nevada Supreme Court, as discussed, *supra*.

22  **III.  Petitioner's Options Regarding Unexhausted Claims**

23        A federal court may not entertain a habeas petition unless the petitioner has exhausted

24  available and adequate state court remedies with respect to all claims in the petition.  *Rose v. Lundy*,

25  455 U.S. 509, 510 (1982).  A "mixed" petition containing both exhausted and unexhausted claims is

26

23

subject to dismissal.  *Id.*  In the instant case, the Court has determined that several claims are unexhausted, while several other claims are exhausted.  Because the court finds that the amended petition is a "mixed petition," containing both exhausted and unexhausted claims, petitioner has the following options:

> 1.   She may submit a sworn declaration voluntarily abandoning the unexhausted claims in the amended petition and proceed only on the exhausted claims;
>
> 2.   She may return to state court to exhaust the unexhausted claims, in which case the federal habeas petition will be denied without prejudice; or
>
> 3.   She may file a motion asking this court for a stay and abeyance pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), for the purpose of returning to state court to exhaust the unexhausted claims.

*See Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Rhines v. Weber*, 544 U.S. 269 (2005); *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2002); *King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009).  Petitioner's failure to choose any of the three options listed above, or seek other appropriate relief from this court, will result in the federal habeas petition being dismissed.  Counsel for petitioner is advised to familiarize himself with the limitations periods for filing federal habeas petitions contained in 28 U.S.C. § 2244(d), as those limitations periods may have a direct and substantial effect on whatever choice he makes regarding the petition.

**IV.  Conclusion**

       **IT IS THEREFORE ORDERED** respondents' motion to dismiss (ECF No. 37) the amended petition is **GRANTED IN PART AND DENIED IN PART**, as follows:

       **1.  Grounds 1 and 2 of the amended petition relate back to the original petition and are deemed timely.**

       **2.  In Ground 3 of the amended petition, the ineffective assistance of counsel claim and the claim regarding the trial court's failure to record bench conferences do not relate back to the original petition.  These two sub-claims of Ground 3 are dismissed with prejudice as untimely.**

3.  In Ground 7 of the amended petition, the claims challenging the instructions concerning the burden of proof and the ineffective assistance of counsel claims do not relate back to the original petition.  These sub-claims of Ground 7 are dismissed with prejudice with prejudice as untimely.

4.  In Ground 1 of the amended petition, the Confrontation Clause claim is unexhausted.  The remainder of Ground 1 is exhausted.

5.  In Ground 2 of the amended petition, the following sub-claims are unexhausted: (a) the allegations concerning gruesome photographs of Christine Anziano and Kirk Cole; (b) the allegation regarding the jury's reliance on evidence of the color of the motor vehicle and surveys released after petitioner's trial discussing the color of vehicles in Las Vegas; (c) issues regarding the ownership of purses found in petitioner's residence; and (d) the claim that the trial court persuaded petitioner's counsel to relinquish the right to a limiting instruction relative to the theft of a purse from a vehicle.  The remainder of Ground 2, alleging that petitioner was denied a due process and a fair trial because the trial court refused to grant a severance of the joint trial between petitioner and her co-defendant, forcing petitioner to be tried by a jury that was qualified to render a death sentence, is exhausted.

6.  In Ground 3 of the amended petition, the following sub-claims are unexhausted: (a) the claim that the trial court failed to record bench conferences concerning the *Batson* challenges; (b) the claim that petitioner's rights to the ineffective assistance of counsel and equal protection violated as a result of the makeup of the jury; and (c) petitioner's reference to and use of studies, reports, or other information that was not in the state court record. Petitioner's claim that she was deprived of due process when the trial court refused to grant the defense's *Batson* challenge regarding the exclusion of prospective juror Henderson, an African-American juror, is exhausted.

7. In Ground 4 of the amended petition, petitioner's challenge to the "death qualified" jury is duplicative of Ground 8 of the amended petition. Petitioner's claim that failure to sever her trial from her co-defendant's trial exposed petitioner to claims with which she was not charged is duplicative of Ground 2. Petitioner's allegations that spillover evidence includes the use of crime scene photographs from a crime with which petitioner was charged, the fact that the Nevada Supreme Court reversed the jury verdict against petitioner for the attempted murder of Cole, and the testimony of witnesses pertaining to acts with which petitioner was charged are unexhausted. Petitioner's claim that the failure to sever petitioner's case from her co-defendant subjected her to spillover evidence regarding the "Susan Simon counts," (burglary and larceny) as pled in the fourth claim of petitioner's opening brief on direct appeal submitted to the Nevada Supreme Court, is exhausted.

8. In Ground 5 of the amended petition, to the extent that petitioner asserts a violation of NRS 48.045(2) and that the trial court failed to conduct a *Petrocelli* hearing based on Nevada state law, these claims fail to state cognizable claim for federal habeas relief. Petitioner's due process challenge to the introduction of prejudicial evidence states a cognizable claim for federal habeas relief. Petitioner's equal protection claim is unexhausted. Petitioner's claim that she was denied due process and a fair trial based on the admission of alleged prejudicial evidence (17 purses and alias) is exhausted.

9. In Ground 6 of the amended petition, the claims of double jeopardy and of cruel and unusual punishment are both cognizable in federal habeas corpus and are both exhausted. All other sub-claims within Ground 6 are unexhausted. To the extent that petitioner challenges the Nevada Supreme Court's application of purely state law, those claims are not cognizable in federal habeas.

10. In Ground 7 of the amended petition, the following claims are unexhausted: (a) petitioner's claim challenging the phrase "reckless disregard for the consequences of social

duty" in Jury Instruction #17; (b) petitioner's claims of ineffective assistance of counsel; and (c) petitioner's claim concerning Jury Instruction #36, regarding the general intent instruction and the burden of proof.  Petitioner's claim regarding express and implied malice in Jury Instruction #18 is exhausted.  Petitioner's claim challenging the phrase "heart fatally bent on mischief" in Jury Instruction #17 is exhausted.

11.  In Ground 8 of the amended petition, the following portions are unexhausted: (a) the equal protection claim; (b) allegations regarding details of several potential jurors' statements during the *voire dire* process; and (c) petitioner's argument that the Nevada Supreme Court's reversal of the attempted murder conviction lends more credence to her argument that he trial should have been severed from her co-defendant's trial.  Petitioner's claim that her right to due process was violated because the trial court refused to sever her case from her co-defendant's case, allowing a death-qualified jury to convict her, is exhausted.

12.  In Ground 9 of the amended petition, the cumulative error claim is exhausted to the extent that it encompasses claims that were fairly presented to the Nevada Supreme Court.

IT IS FURTHER ORDERED that within **thirty (30) days** from the date of entry of this order, petitioner **SHALL EITHER: (1)** inform this Court in a sworn declaration that she wishes to formally and forever abandon the unexhausted grounds for relief in her federal habeas petition and proceed on the exhausted grounds; **OR (2)** inform this Court in a sworn declaration that she wishes to dismiss this petition without prejudice in order to return to state court to exhaust the unexhausted claims; **OR (3)** file a motion for a stay and abeyance pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), asking this Court to hold the exhausted claims in abeyance while she returns to state court to exhaust the unexhausted claims.  If petitioner chooses to file a motion for a stay and abeyance, or seek other appropriate relief, respondents may respond to such motion as provided in Local Rule 7-2.

IT IS FURTHER ORDERED that if petitioner elects to abandon her unexhausted grounds, respondents shall have **thirty (30) days** from the date petitioner serves her declaration of

27

abandonment in which to file an answer to petitioner's remaining grounds for relief.  The answer shall contain all substantive arguments as to the merits of all surviving grounds of the amended petition, and shall comply with Rule 5 of the Rules Governing Proceedings in the United States District Courts under 28 U.S.C. §2254.

**IT IS FURTHER ORDERED** that petitioner shall have **thirty (30) days** following service of respondents' answer in which to file a reply.

**IT IS FURTHER ORDERED** that if petitioner fails to respond to this order regarding her options for dealing with the unexhausted claims within the time permitted, this case may be dismissed.

**IT FURTHER IS ORDERED** that any further exhibits filed by the parties shall be filed with a separate index of exhibits identifying the exhibits by number or letter.  The CM/ECF attachments that are filed further shall be identified by the number or numbers (or letter or letters) of the exhibits in the attachment.  The hard copy of any additional exhibits shall be forwarded – for this case – to the staff attorneys in **Reno, Nevada.**  The hard copy of all exhibits submitted to the Court shall be tabbed and shall be bound along the top edge of the pages.

Dated this _____20th_____ day of November, 2014.

_____
UNITED STATES DISTRICT JUDGE

28