# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Mydrus Archie,

    Petitioner,

v.

Sheryl Foster, et al.,

    Respondents.

2:10-cv-01968-JAD-NJK

**Order Denying Petition for Writ of Habeas Corpus**

Petitioner Mydrus Archie, a prisoner in the custody of the State of Nevada, brings this habeas action under 28 U.S.C. § 2254 to challenge her 2007 convictions for conspiracy to commit robbery, robbery with use a deadly weapon, and second-degree murder with use of a deadly weapon. After evaluating her claims on their merits, I deny Archie's petition for a writ of habeas corpus, dismiss this action with prejudice, and deny a certificate of appealability.

## I. Background

The procedural history of this case was summarized in this Court's November 20, 2014, order.[1] In that order, this Court granted in part and denied in part the State's motion to dismiss, carefully circumscribing the grounds and theories that Archie had exhausted in state court.[2] In response, Archie abandoned the unexhausted grounds and proceeded forward "only on the exhausted grounds, as identified by the Court in its Order."[3] The State then filed its answer[4] and Archie filed her reply.[5]

---

[1] *See* ECF No. 44 at 1–4. I incorporate that procedural history by reference here.

[2] *See id.* at 24–27.

[3] ECF No. 47 at 3.

[4] ECF No. 48.

[5] ECF No. 54.

1

## II. Standard of review

When a state court has adjudicated a claim on its merits, the Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating the state court ruling; that standard is "difficult to meet" and "demands that state-court decisions be given the benefit of the doubt."[6] Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that the state court decision was incorrect.[7] Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the state court decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.[8] The petitioner bears the burden of proving that she is entitled to habeas relief.[9]

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result.[10] A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions.[11] The Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them.[12] And "a federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at

---

[6] *Cullen v. Pinholster*, 563 U.S. 170 (2011).

[7] *Id.* at 202.

[8] *Id.* at 181–88.

[9] *Id.* at 181.

[10] *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003).

[11] *Id.*

[12] *Id.*

2

best, ambiguous."[13]  A decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable."[14]  When a state court's factual findings are challenged, the "unreasonable determination of fact" clause of 28 U.S.C. § 2254(d)(2) controls,[15] which requires federal courts to be "particularly deferential" to state court factual determinations.[16]  This standard is not satisfied by a mere showing that the state court finding was "clearly erroneous."[17]  Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision.  Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.[18]

### III.  Discussion

**A.  Ground 1**

In Ground 1, Archie argues that the trial court violated the "Fifth, Sixth and Fourteenth Amendments [by] allow[ing] the jurors to pose questions to the witnesses without consultation with counsel [as required by the procedure established by the Supreme Court of Nevada], violating Ms. Archie's right to effective assistance of counsel . . . and her due process rights."[19]  This ground has two issues: whether the jurors' questions rendered Archie's trial "fundamentally unfair" and whether

---

[13] *Id.* at 16.

[14] *See, e.g., id.* at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

[15] *See, e.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004).

[16] *Id.*

[17] *Id.* at 973.

[18] *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

[19] ECF No. 34 at 13; *see also* ECF No. 44 at 11 (finding the rest of Ground 1 unexhausted).

3

her trial counsel's failure to insist on the procedure required by the Supreme Court of Nevada rendered counsel ineffective.[20] The Supreme Court of Nevada, citing a federal harmless-error standard, rejected the state-law argument but did not address the federal constitutional arguments.[21] And even if the opinion were construed to have rejected the federal constitutional arguments, the only manner in which it could be interpreted as doing so would have been contrary to U.S. Supreme Court precedent because it applied the incorrect harmless-error standard.[22] Therefore, I review this Ground de novo.

To succeed on an ineffective-assistance-of-counsel claim, a defendant must show that counsel's representation fell below an objective standard of reasonableness and a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."[23] Courts evaluate a counsel's performance from counsel's perspective at the time and begin with a strong presumption that counsel's conduct fell within the wide range of reasonable conduct.[24]

While Archie is correct, as the Supreme Court of Nevada conceded,[25] that the state trial court did not follow the procedure outlined by Nevada precedent, that is not enough to establish that counsel was ineffective for failing to object. Instead, Archie must show that no reasonable attorney would have opted to expedite the trial by letting the jury simply ask its questions. Archie does not

---

[20] *See Flores v. State*, 965 P.2d 901, 902–03 (Nev. 1998).

[21] ECF No. 34-1 at 13–14 (citing *Kotteakos v. United States*, 328 U.S. 750, 776–77 (1946)); *see Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015) (holding that a state court's decision that federal error was harmless "undoubtedly constitutes an adjudication . . . 'on the merits'"); *Esparanza*, 540 U.S. at 17–18.

[22] *Compare Chapman v. California*, 386 U.S. 18 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."), *with Kotteakos*, 328 U.S. at 776 (holding a non-constitutional error harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict").

[23] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

[24] *See, e.g.*, *Beardslee v. Woodford*, 358 F.3d 560, 569 (9th Cir. 2004).

[25] ECF No. 34-1 at 14 ("[I]t appears that the district court did not rigorously adhere to the *Flores* safeguards . . . .").

4

make this argument at all, and thus fails to meet her burden. An attorney does not have to insist that a trial court follow each and every rule for the sake of following the rule. More importantly, Archie fails to demonstrate how insisting that counsel review the questions before they were asked had any probability of influencing the outcome of the proceedings. Indeed, as the Supreme Court of Nevada held, Archie does not identify a single inappropriate question that her counsel would have been able to object to had the proper procedure been followed.[26] And I am likewise unable to find one in the record. Therefore, she has failed to carry her burden of establishing either deficiency or prejudice, and her claim of ineffectiveness of trial counsel fails.

The other side of this ground is that allowing the jury to question witnesses without first allowing trial counsel the opportunity to preview the questions violated Archie's due process rights. However, for a jury-question process to violate due process and make the trial fundamentally unfair it must not be neutral and the challenger must point to prejudice resulting from the questions asked.[27] Again, Archie fails to identify any questions that could have caused her prejudice or any reason why the process was not neutral. And again, I am unable to find one in the record. Simply failing to follow the procedure set forth by the Supreme Court of Nevada does not render a trial violative of the Fourteenth Amendment's Due Process Clause.[28]

Ground 1 provides no basis for habeas relief.

**B.  Ground 2**

In Ground 2, Archie argues that her Sixth and Fourteenth Amendment rights to a fair trial and due process were violated when she was tried alongside her co-defendant rather than in a severed trial because that resulted in her being tried by a death-qualified jury.[29] The Supreme Court of

---

[26] *See id.* at 13–14.

[27] *See United States v. Huebner*, 48 F.3d 376, 382 (9th Cir. 1994); *see also United States v. Bush*, 47 F.3d 511, 514–16 (2d Cir. 1995); *United States v. Gonzales*, 424 F.2d 1055, 1056 (9th Cir. 1970) (per curiam) ("Gonzales next claims error where a juror submitted a question to the court and the court asked several questions of a witness. This was not error.").

[28] *See Estelle v. McGuire*, 502 U.S. 62, 68–69 (1991).

[29] ECF No. 34 at 19; *see also* ECF No. 44 at 13 (finding the rest of Ground 2 unexhausted).

5

Nevada rejected this claim on its merits.[30] And the U.S. Supreme Court has expressly rejected constitutional challenges based on trials by death-qualified juries, finding the juries impartial regardless of their death qualifications.[31] This precludes Archie's claim. There is no clearly established federal law regarding when severance is constitutionally required. This independently defeats Archie's claim.[32]

The Supreme Court of Nevada's rejection of Archie's claim that not severing the trial led to a death-penalty qualified jury in violation of her federal constitutional rights did not involve an unreasonable determination of fact, nor was it contrary to, or an unreasonable application of, clearly established U.S. Supreme Court case law.

Ground 2 provides no basis for habeas relief.

**C.    Ground 3**

In Ground 3, Archie argues that the state trial court erred in denying her *Batson* challenge to the State's striking of an African American person from the jury, thus depriving her of her due process rights.[33] The Supreme Court of Nevada affirmed the trial court's denial of the *Batson* challenge, holding that there were race-neutral reasons and Archie failed to explain why the strike violated *Batson* and rather only tried to argue that Henderson "was a qualified juror."[34]

A *Batson* challenge mandates a three-step procedure: First, the person objecting makes out a prima facie case of discrimination. Second, the other side produces race-neutral justifications for striking the juror. Third, the trial court decides whether the justifications provided were merely a

---

[30] ECF No. 34-1 at 10.

[31] *See, e.g.*, *Lockhart v. McCree*, 476 U.S. 162, 184 (1986) ("[T]he Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case.").

[32] *See Runningeagle v. Ryan*, 686 F.3d 758, 776–77 (9th Cir. 2012).

[33] ECF No. 34 at 26; *see also* ECF No. 44 at 15 (finding the rest of Ground 3 unexhausted).

[34] ECF No. 34-1 at 12–13.

pretext and race played a factor in the decision.[35]

When Archie made her *Batson* challenge, the State explained that it struck Henderson because 15 of the 18 members of Henderson's family had been sent to prison.[36] Moreover, the State further explained that Henderson's nephew was murdered "and no one investigated and . . . he was angry about that fact that it wasn't investigated."[37] Finally, the State mentioned that Henderson had expressed less-than-full support for the imposition of the death penalty and his ability to impose it on anyone.[38]

Indeed, these facts were mostly corroborated by Henderson's testimony during voir dire. Henderson explained that his nephew was murdered four years prior, that they "grew up together," and that they "were like brothers."[39] When the State asked Henderson about the "little bit of anger in [his] answer," as perceived by the State, Henderson answered that "the anger that you see if you can call it anger" was that his nephew was a former gang member—a "pretty notorious" one—and so the police "really didn't want to deal with that" and "there was one less banger they had to worry about."[40] He also acknowledged that several of his family members were incarcerated.[41] When asked about the death penalty, he was "not sure" what he would do with "someone else's life in [his] hand[s]."[42]

After the State gave its reasons during the *Batson* hearing, the state trial court agreed with defense counsel's rebuttal that Henderson didn't seem angry.[43] Nonetheless, the state trial court

---

[35] *See, e.g.*, *Hernandez v. New York*, 500 U.S. 352, 358–59 (1991).

[36] ECF No. 34-8 at 69.

[37] *See id.*

[38] *See id.*

[39] ECF No. 34-6 at 150–51.

[40] *Id.* at 153–55.

[41] *See id.* at 156.

[42] *Id.* at 158, 160.

[43] ECF No. 34-8 at 69.

rejected the *Batson* challenge noting, "I picked up myself on some things that he said, which, you know, if I were prosecuting the case might make me concerned."[44] Indeed, the lack of an investigation into someone who was "like a brother" to Henderson combined with the proliferation of criminality and incarceration in his family provided the State with race-neutral reasons for exercising its peremptory challenge on Henderson. Archie's arguments in her petition go entirely to other statements made that paint him to be a reasonable juror—but whether he would have been a reasonable juror is not the question. The question is whether the State struck Henderson due in part to his race under the *Batson* framework, and the answer is no.

The Supreme Court of Nevada's rejection of Archie's *Batson* challenge did not involve an unreasonable determination of fact, nor was it contrary to, or an unreasonable application of, clearly established U.S. Supreme Court case law.

Ground 3 provides no basis for habeas relief.

**D.    Ground 4**

In Ground 4, Archie argues that the district court's refusal to sever her trial from her co-defendant's trial violated her right to a fair trial because the joint trial subjected her to a jury that heard evidence of the "Susan Simon counts," a purse-snatching earlier in the day for which she was not charged but her co-defendant was.[45] The Supreme Court of Nevada rejected this claim on its merits.[46] As explained above, there is no clearly established law on when severance is required, and this is fatal to Archie's claim.[47]

Even if not, however, the admission of that evidence, along with the accompanying instructions not to consider it as to Archie, did not render the trial "fundamentally unfair."[48] In fact, Archie does not really explain how that prejudiced her, only that the jury thus heard evidence of a

---

[44] ECF No. 34-8 at 69.

[45] ECF No. 34 at 31; *see also* ECF No. 44 at 16 (finding the rest of Ground 4 unexhausted).

[46] ECF No. 34-1 at 11–12.

[47] *See Runningeagle*, 686 F.3d at 776–77.

[48] *Jammal*, 926 F.2d at 919.

crime that she was not charged with. That does not meet her burden of showing that the trial was fundamentally unfair.

The Supreme Court of Nevada's rejection of Archie's claim that not severing the trial led to spillover evidence in violation of her federal constitutional rights did not involve an unreasonable determination of fact, nor was it contrary to, or an unreasonable application of, clearly established U.S. Supreme Court case law.

Ground 4 provides no basis for habeas relief.

**E.    Ground 5**

In Ground 5, Archie argues that the state trial court erred, and thus violated her rights to a fair trial and due process, by admitting into evidence "17 purses located in Ms. Archie's apartment" and allowing Archie to be referred to by the last name Smith by one witness and on a fingerprint identification card because she had given that pseudonym to California law enforcement.[49] Archie argues that this evidence prejudiced her because it was the equivalent of prior bad-acts testimony in light of the fact that there had been 17 robberies and 17 purses found at the apartment.[50] The Supreme Court of Nevada addressed Archie's state evidentiary challenge to the admission of the purses by holding that "Archie failed to demonstrate error, or if error occurred, any prejudicial effect."[51] There is no Supreme Court case law establishing that the admission of prior bad acts renders a trial fundamentally unfair.[52] However, because it is unclear if the Supreme Court of Nevada addressed the federal constitutional claim rather than only the state evidentiary one, I review this claim de novo.

As this Court explained in its previous order,[53] the federal courts "are not a state supreme

---

[49] ECF No. 34 at 38; *see also* ECF No. 44 at 19 (finding the rest of Ground 5 unexhausted).

[50] ECF No. 34 at 38.

[51] ECF No. 34-1 at 14–15.

[52] *See Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008).

[53] *See* ECF No. 44 at 17–18.

9

court of errors; we do not review questions of state evidence law."[54]  Instead, the federal courts on habeas review care only "whether the admission of the evidence so fundamentally infected the proceedings as to render them fundamentally unfair," and thus constitutionally problematic.[55]  Not only must there be "*no* permissible inference the jury may draw from the evidence," but also the evidence must "be of such quality as necessarily prevents a fair trial."[56]  In other words, the evidence is not constitutionally suspect unless it is irrelevant and has no probative value.[57]  Whether the admission of evidence violated state law "is no part of a federal court's habeas review of a state conviction."[58]

Archie does not carry her burden of demonstrating that the admission of 17 purses into evidence, which could be tied to 17 robberies, rendered the trial fundamentally unfair.  I am skeptical that a jury would convict someone for murder because they had stolen 17 purses, and thus that her trial was fundamentally unfair because of its admission.  What's more important, though, is that this isn't even properly characterized as prior-bad-acts testimony.  Instead, the evidence had the constitutionally permissible purpose of showing that Archie was involved in a scheme to steal purses—and that the crimes of which she was charged involved the same thing.  In other words, it could show a common scheme or plan, and that is a constitutionally permissible purpose.

Archie similarly does not carry her burden of demonstrating that the admission of fingerprint cards with her alias on them violated her due process rights.  Again, I doubt that the admission of the fact that Archie had previously gone by a different name rendered the trial fundamentally unfair.  There is no evidence that the reason that the name was different was the result of either a name change or an alias.  And even if there were, there was already evidence put forth at trial that Archie told people that her name was Barbara before being arrested on these charges, and so another alias

---

[54] *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

[55] *Id.*

[56] *Id.* at 920 (citation omitted); *see also Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998).

[57] *See Estelle v. McGuire*, 502 U.S. 62, 68–69 (1991).

[58] *Id.* at 67.

would have been only duplicative of this type of lie. So, the use of another alias had a constitutionally permissible purpose of showing that, when Archie is involved in crimes, she gives false names, thus lending credence to the witness's other testimony.

Ground 5 provides no basis for habeas relief.

**F.     Ground 6**

In Ground 6, Archie argues that her rights against being placed in double jeopardy and being subjected to cruel and unusual punishment were violated when the state trial court sentenced her under Nevada's habitual-criminal statute to life without the possibility of parole.[59] The Supreme Court of Nevada rejected these claims on their merits.[60]

The notion that the habitual-criminal statute violates double jeopardy has been repeatedly rejected by the Supreme Court.[61] Archie's cruel-and-unusual-punishment argument fares little better. The "precise contours" of the gross disproportionality principle—the only principle established for the Eighth Amendment on this point—are "unclear" and warrant federal habeas relief only in "exceedingly rare cases."[62] Someone died as a result of Archie's criminal actions. Archie has a lengthy criminal record that includes six felonies for grand larceny, forgery, attempted burglary, and burglary.[63] Therefore, the sentence of life without the possibility of parole here is not one of the "exceedingly rare" cases where a defendant is entitled to federal habeas relief. Indeed, Archie points to no U.S. Supreme Court case holding that imposing a life sentence without the possibility of parole for second-degree murder violates the Eighth Amendment.

The Supreme Court of Nevada's rejection of Archie's claim that her sentence violated her federal constitutional rights did not involve an unreasonable determination of fact, nor was it

---

[59] ECF No. 34 at 43; ECF No. 34-15 at 39; *see also* ECF No. 44 at 19–20 (finding the rest of Ground 6 unexhausted).

[60] ECF No. 34-1 at 15.

[61] *See, e.g.*, *Parke v. Raley*, 506 U.S. 20, 27 (1992); *see also Moore v. Missouri*, 159 U.S. 673, 676–77 (1895).

[62] *Lockyer v. Andrade*, 538 U.S. 63, 72–23 (2003).

[63] *See* ECF No. 34-15 at 37.

11

contrary to, or an unreasonable application of, clearly established U.S. Supreme Court case law.

Ground 6 provides no basis for habeas relief.

**G.	Ground 7**

In Ground 7, Archie argues that her right to a fair trial was violated because the state trial court gave an unconstitutionally vague jury instruction defining malice aforethought, violating her due process rights.[64] The Supreme Court of Nevada rejected this argument on its merits, citing case law specifically addressing constitutional challenges to the instruction.[65] To be unconstitutional, "the ailing instruction [had to] by itself so infect[] the entire trial that the resulting conviction violates due process" because it is fundamentally unfair.[66] The Supreme Court has made clear that it has "defined the category of infraction that violate 'fundamental fairness' very narrowly."[67]

The instruction read:

> Malice aforethought means the intentional doing of a wrongful act without legal cause or excuse or what the law considers adequate provocation. The condition of mind described as malice aforethought may arise, [sic] from anger, hatred, revenge or from particular ill will, spite or grudge toward the person killed. It may also arise from any unjustifiable or unlawful motive or purpose to injure another, proceeding from a heart fatally bent on mischief or with reckless disregard of consequences and social duty. Malice aforethought does not imply deliberation or the lapse of any considerable time between the malicious intention to injure another and the actual execution of the intent but denotes an unlawful purpose and design in contradistinction as opposed to accident and mischance.[68]

Archie points to the phrase "a heart fatally bent on mischief" and argues that this wording "obviously confused the jurors."[69] When she challenges the phrase "abandoned and malignant

---

[64] ECF No. 34 at 50; *see also* ECF No. 34-1 at 49–50; ECF No. 44 at 20 (finding the rest of Ground 7 unexhausted).

[65] ECF No. 34-1 at 14 (citing *Leonard v. State*, 17 P.3d 397 (Nev. 2001)).

[66] *McGuire*, 502 U.S. at 71–72.

[67] *Id.* at 72–73.

[68] ECF No. 34-3 at 3.

[69] ECF No. 54 at 17.

12

heart," she similarly argues that it is "so vague as to be devoid of content and simply pejorative."[70] I recognize that these phrases are slightly archaic, but that does not make them unconstitutional. Viewed in light of the whole instruction and the rest of the record, the instruction accurately defined malice aforethought. Indeed, beyond pointing to the fact that this phrase is not commonly used today and then dredging up an argument that the instruction "obviously confused the jurors" because she was (in her estimation) innocent, Archie points to nothing to meet the standard of showing that the instruction rendered the trial fundamentally unfair.[71] Indeed, federal courts have repeatedly upheld this instruction on habeas review.[72] I do as well.

Relatedly, Archie argues that another instruction required the jury to presume malice, thus lowering the burden of proof for the State and violating her due process rights.[73] The Ninth Circuit has rejected the argument challenging this jury instruction because "[t]his sort of permissible inference did not shift the burden of proof."[74] If the Ninth Circuit agrees with the Supreme Court of Nevada, then I cannot say that the Supreme Court of Nevada's decision violated clearly established federal law.

The Supreme Court of Nevada's rejection of Archie's claim that the jury instructions violated her due process rights did not involve an unreasonable determination of fact, nor was it contrary to, or an unreasonable application of, clearly established U.S. Supreme Court case law.

Ground 7 provides no basis for habeas relief.

. . .

. . .

---

[70] ECF No. 34 at 51.

[71] *Id.*

[72] *See, e.g.*, *Collins v. McDaniel*, 2009 WL 3052233, at *6 (D. Nev. Sept. 18, 2009).

[73] ECF No. 34 at 51.

[74] *Odoms v. Hatcher*, 83 F.3d 428 (9th Cir. 1996); *see also United States v. Warren*, 25 F.3d 890, 897 (9th Cir. 1994).

**H.     Ground 9**

In Ground 9, Archie argues that cumulative trial error violated her constitutional rights.[75] The Supreme Court of Nevada rejected this claim on its merits.[76] The Ninth Circuit has held that

> the Supreme Court has clearly established that the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal. . . . [T]he fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense "far less persuasive" and thereby had a "substantial and injurious effect or influence" on the jury's verdict.[77]

But, as I have explained throughout this order, no errors or conflagration of errors claimed by Archie had a "substantial and injurious effect or influence" on the jury's verdict. The Supreme Court of Nevada's rejection of Archie's claim that cumulative trial error violated her constitutional rights did not involve an unreasonable determination of fact, nor was it contrary to, or an unreasonable application of, clearly established U.S. Supreme Court case law.

Ground 9 provides no basis for habeas relief.

## IV.     Conclusion

Accordingly, IT IS HEREBY ORDERED that **Archie's petition for a writ of habeas corpus is DENIED** on its merits, and this action is **DISMISSED with prejudice**.[78]

Because reasonable jurists would not find this decision to be debatable or incorrect, IT IS FURTHER ORDERED that a **certificate of appealability is DENIED**. The Clerk of Court is

---

[75] ECF No. 34 at 65; *see also* ECF No. 44 at 20 (finding this exhausted only as to errors presented to the Supreme Court of Nevada, and exhausted there). The exhausted portion of Ground 8 is duplicative of Ground 4, so it is addressed in subsection D above. *See* ECF No. 44 at 26 (concluding that petitioner's challenge to the death-qualified jury in Ground 4 is "duplicative of Ground 8 of the amended petition.").

[76] ECF No. 34-1 at 15.

[77] *Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007) (citations omitted).

[78] A petitioner may not use a reply to an answer to present additional claims and allegations that are not included in the federal petition. *See, e.g., Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). To the extent that Archie has done so in her federal reply, I do not consider these additional claims and allegations.

directed to **enter judgment in favor of respondents and against Archie, dismiss this action with prejudice**, and **CLOSE THIS CASE**.

DATED September 7, 2017.

_____
Jennifer A. Dorsey
United States District Judge